# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JOEVONE M. JORDAN,

                Plaintiff,

v.

DR. JEFFREY MANLOVE,

                Defendant.

Case No. 20-CV-1809-JPS

**ORDER**

Plaintiff Joevone M. Jordan ("Plaintiff"), an inmate confined at Waupun Correctional Institution ("WCI"), filed a *pro se* complaint under 42 U.S.C. § 1983 alleging that Defendant violated his Eighth Amendment rights. (Docket #1). Plaintiff also filed a motion to appoint counsel. (Docket #9). This order resolves Plaintiff's motion for leave to proceed without prepaying the filing fee and motion to appoint counsel, as well as screens his complaint.

**1.    MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE**

The Prison Litigation Reform Act ("PLRA") applies to this case because Plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On December 15, 2020, the Court ordered Plaintiff to pay an initial partial filing fee of $10.95. (Docket #7). Plaintiff paid that fee on January 11,

2021. The Court will grant Plaintiff's motion for leave to proceed without prepaying the filing fee. (Docket #2). He must pay the remainder of the filing fee over time in the manner explained at the end of this order.

2.  **SCREENING THE COMPLAINT**

    **2.1  Federal Screening Standard**

    Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

    In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

    To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or

the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes *pro se* complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations

Plaintiff alleges that Defendant Dr. Jeffrey Manlove ("Dr. Manlove") violated his Eighth Amendment rights because he refused to provide Plaintiff adequate medical care for his broken nose, even though Plaintiff had written numerous Health Service Requests ("HSR") stating that he was in pain. (Docket #1 at 3–4).

Specifically, Plaintiff alleges that in early May 2019, he broke his nose during a fight with another inmate. (*Id.* at 2). The Health Services Unit ("HSU") was notified and Plaintiff was seen directly after the fight. (*Id.*) Plaintiff alleges that "[s]taff refused to send me off ground to receive proper treatment." (*Id.*) Instead, Plaintiff "was forced to suffer an entire weekend with nothing but an ice pack." (*Id.*) On May 7, 2019, Plaintiff was X-rayed to determine the severity of his injury. (*Id.* at 2–3). Approximately two days later, Dr. Manlove saw Plaintiff. (*Id.* at 3). During the appointment, Dr. Manlove told Plaintiff that no further treatment was needed because his nose was still straight. (*Id.*)

Plaintiff filed numerous HSRs complaining of headaches, shortness of breath, and pain, and on June 13, 2019, he had another X-ray. (*Id.*) Plaintiff requested surgery for his nose, but his request was denied. (*Id.*) After the X-ray, Plaintiff was scheduled for an MRI, and he was given a nasal spray

which diminished his sense of smell. (*Id.*) The MRI showed that Plaintiff's nose was slightly off track. (*Id.*) Plaintiff was sent to a specialist sometime between June and August 2020, and he was scheduled for surgery in October 2020. (*Id.*) However, due to COVID-19, Plaintiff has not received his surgery yet. (*Id.*)

### 2.3 Analysis

Plaintiff's allegations invoke his rights under the Eighth Amendment, which secures an inmate's right to medical care. Prison officials violate this right when they "display deliberate indifference to serious medical needs of prisoners." *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005) (quotation omitted). To sustain such a claim for deliberate indifference to a serious medical need in violation of the Eighth Amendment, a plaintiff must show: (1) an objectively serious medical condition; (2) that the defendant knew of the condition and was deliberately indifferent in treating it; and (3) that this indifference caused him some injury. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

The deliberate indifference inquiry has two components: "[t]he official must have subjective knowledge of the risk to the inmate's health, and the official also must disregard that risk." *Id.* Deliberate indifference equates to intentional or reckless conduct, not mere negligence. *Berry*, 604 F.3d at 440. "Neither medical malpractice nor mere disagreement with a doctor's medical judgment is enough to prove deliberate indifference." *Id.* at 441. Further, "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." *Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008) (quotation omitted). Rather, a medical professional is deliberately indifferent only when his decisions are "such a substantial

departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 895 (quotation omitted). Lastly, to show that a delay in providing treatment is actionable under the Eighth Amendment, Plaintiff must also provide evidence that the delay exacerbated his injury or unnecessarily prolonged pain. *Petties v. Carter*, 836 F.3d 722, 730–31 (7th Cir. 2016).

In this case, Plaintiff's broken nose that requires surgery may be an objectively serious medical issue, satisfying the first element. *See Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008). The next element, regarding whether Dr. Manlove was deliberately indifferent is less clear. Based on the complaint, it appears that Dr. Manlove saw Plaintiff after he had already received medical care for his nose, and, during the appointment, Dr. Manlove provided additional medical care to Plaintiff. It may not have been the care that Plaintiff preferred, but that is not the standard of deliberate indifference. *Reynolds v. Barnes*, 84 F. App'x 672, 674 (7th Cir. 2003) ("[T]he Constitution does not mandate that a prisoner receive exactly the medical treatment he desires.")

However, Plaintiff's allegations that he continued to seek treatment from Dr. Manlove, who refused to provide him adequate medical care, is just enough under the lenient standard applied to the screening stage to state a claim for deliberate indifference. Therefore, the Court will allow Plaintiff to proceed on a claim of deliberate indifference, in violation of the Eighth Amendment, against Dr. Manlove for the alleged denial of medical care, during the time period after the first medical appointment with Dr. Manlove in May 2019 until Dr. Manlove stopped working for WCI.

### 3. MOTION TO APPOINT COUNSEL

The Court next turns to Plaintiff's motion to appoint counsel. (Docket #9). As a civil litigant, Plaintiff has no automatic right to court-appointed counsel. *Luttrell v. Nickel*, 129 F.3d 933, 936 (7th Cir. 1997). However, under 28 U.S.C. § 1915(e)(1), the "court may request an attorney to represent any person unable to afford counsel." The court should seek counsel to represent a plaintiff if: (1) he has made reasonable attempts to secure counsel; and (2) "'the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it.'" *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc)). Whether to appoint counsel in a particular case is left to the Court's discretion. *James*, 889 F.3d at 326; *McCaa v. Hamilton*, 893 F.3d 1027, 1031 (7th Cir. 2018).

While framed in terms of the plaintiff's capacity to litigate, this discretion must also be informed by the realities of recruiting counsel in this District. When the Court recruits a lawyer to represent a *pro se* party, the lawyer takes the case *pro bono*. Unlike a lawyer appointed to represent a criminal defendant during his prosecution, who is paid by the government for his work, an attorney who takes a prisoner's civil case *pro bono* has no promise of compensation.

It is difficult to convince local lawyers to take such cases. Unlike other districts in this Circuit, *see, e.g.*, L.R. 83.35 (N.D. Ill.), the Eastern District of Wisconsin does not employ an involuntary appointment system for lawyers admitted to practice here. Instead, the District relies on the willingness of lawyers to sign up for the Pro Bono Attorney Panel and, once there, accept appointments as needed. *See* Pro Bono Program, *available at*: http://www.wied.uscourts.gov/pro-bono-program.

The District is eternally grateful to the lawyers who participate in the Pro Bono Program, but there are never enough volunteers, and those who do volunteer rarely take more than one or two cases a year. This is understandable, as many are already busy attending to fee-paying clients. Though the Pro Bono Program does provide for payment of certain litigation expenses, it does not directly compensate a lawyer for his or her time. Participants may seek attorney's fees when permitted by statute, such as in successful Section 1983 cases, but they will otherwise go unpaid. The small pool of attorneys available to this District for *pro bono* appointments stands in stark contrast to that of the Court of Appeals, which regularly recruits counsel from across the nation to represent *pro se* plaintiffs on appeal. *See, e.g.*, *James*, 889 F.3d at 323 (appointing counsel from Washington, D.C. to represent the *pro se* appellant); *McCaa*, 893 F.3d at 1029 (same).

Against the thin ranks of ready and willing counsel rises the overwhelming tide of *pro se* prisoner litigation in this District.[1] In 2010, approximately 300 civil actions were filed by prisoner litigants. More than half sought habeas corpus relief, while the remainder were Section 1983 actions alleging violations of constitutional rights. Since then, the number of habeas corpus cases has remained largely steady at around 130 per year,

---

[1] Although non-prisoner *pro se* litigants may also be considered for the appointment of counsel under Section 1915, the Court does not address that set of *pro se* litigants here for a few reasons. First, the volume of non-prisoner *pro se* litigation is miniscule compared to that brought by prisoners. Second, prisoners are much more likely to request the appointment of counsel. Paradoxically, prisoners are usually far better equipped to litigate than non-prisoners, as prisoners have access to electronic filing, institution law libraries, and fellow prisoners who offer services as "jailhouse lawyers." Yet, learning a little of the legal system means that prisoners know they can request the appointment of *pro bono* counsel, which they do with regularity.

while the volume of Section 1983 lawsuits has skyrocketed. About 300 Section 1983 actions were filed in 2014, and another 300 in 2015—each equal to the entirety of the District's civil prisoner filings from just four years earlier. In 2016, Section 1983 actions numbered 385, in 2017 it ballooned to 498, in 2018 it grew to 549, in 2019 it dipped to 496, and in 2020, during the COVID-19 pandemic, 515 cases were filed. All told, well over a third of the District's new case filings are submitted by unrepresented inmates. On its best day, this District has the resources to realistically consider appointment of counsel in only a tiny fraction of these cases.

Finally, it must be remembered that when the Court determines that counsel recruitment is appropriate, it can take months to locate a willing lawyer. This delay works to the detriment of all parties and contravenes Congress's instruction in Federal Rule of Civil Procedure 1 that district courts must endeavor to secure the "just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Thus, looming large over each request for counsel are the Court's ever-more-limited time and resources.

With these considerations in mind, the Court returns to the question presented: whether counsel can and should be recruited to represent Plaintiff at this stage in this case. First, the Court asks whether the litigant has made "reasonable" efforts to obtain his own representation. *Pruitt*, 503 F.3d at 655; *Jackson v. County of McLean*, 953 F.2d 1070, 1073 (7th Cir. 1992). It is a question not often litigated; many district judges either overlook arguably unreasonable efforts at obtaining counsel, or they impose eminently practical requirements such as the submission of evidence demonstrating that the prisoner has tried and failed to secure

representation from several lawyers. *See, e.g.*, *Kyle v. Feather*, 2009 WL 2474627, at *1 (W.D. Wis. Aug. 11, 2009).

The first element of *Pruitt* is fairly easy to satisfy, but it is not toothless, and it is not a mere technical condition of submitting a certain number of rejection letters. If it was, then a Wisconsin prisoner litigating a Section 1983 action could submit rejection letters from ten randomly selected criminal defense lawyers from Nevada and call his work complete. This cannot be. The purpose of the reasonable-efforts requirement is to ensure that if the Court and private lawyers must expend scarce resources to provide counsel for a prisoner, he has at least made a good-faith effort to avoid those costs by getting a lawyer himself. To fulfill this duty, a *pro se* prisoner should reach out to lawyers whose areas of practice suggest that they might consider taking his case. If he learns that some of the lawyers he has contacted do not, he should reach out to others before he concludes that no one will help him.

In this case, Plaintiff provides the Court with three letters he sent to lawyers, the ACLU (twice) and the Legal Assistance to Institutionalized Persons, as well as two letters of rejection from lawyers. (Docket #10 at 4–14). In each letter, Plaintiff provides information regarding both of his pending Section 1983 cases before this Court.[2] (*Id.* at 4–7). Plaintiff's showing is simply insufficient to satisfy the first element. Because Plaintiff has filed a motion to appoint counsel in both of his pending cases, he must demonstrate that he sought representation from at least three lawyers who actually practice in this area for each case before asking the Court to appoint

---

[2]*Joevone M. Jordan v. Dr. Jeffrey Manlove, et al.*, 20-CV-1807 and *Joevone M. Jordan v. Dr. Jeffrey Manlove*, 20-CV-1809.

him counsel. Stated differently, Plaintiff must show that he contacted three lawyers regarding the facts of this case and three additional lawyers regarding the facts of *Joevone M. Jordan v. Dr. Jeffrey Manlove, et al.*, 20-CV-1807. The Court acknowledges that this places an additional burden on Plaintiff, but his request for *pro bono* appointed counsel is a serious one and cannot be taken lightly. Thus, Plaintiff has failed to satisfy the first element in *Pruitt*, and the Court need not go further in its analysis.

### 4. CONCLUSION

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claim pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** Deliberate indifference to Plaintiff's serious medical needs, in violation of the Eighth Amendment, against Defendant Dr. Jeffrey Manlove for the alleged denial of medical care, during the time period after the first medical appointment with Dr. Manlove in May 2019 until Dr. Manlove stopped working for WCI.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee (Docket #2) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to appoint counsel (Docket #9) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on Defendant Dr. Jeffrey Manlove;

**IT IS FURTHER ORDERED** that under the informal service agreement, Defendant Dr. Jeffrey Manlove shall file a responsive pleading to the complaint within 60 days;

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the $339.05 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Plaintiff is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this order along with his remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Plaintiff is confined;

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this order; and

**IT IS FURTHER ORDERED** that Plaintiffs who are inmates at Prisoner E-Filing Program institutions[3] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to

---

[3] The Prisoner E-Filing Program is mandatory for all inmates of Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

the Court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this case for failure to diligently pursue it. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 28th day of July, 2021.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge